## Case No. 792.

### BALCHELLER v. MASCOUTAH.

[7 Chi. Leg. News, 230.]

Circuit Court, S. D. Illinois.    March 2, 1875.

AUTHORITY OF TOWN TO ISSUE BONDS IN AID OF RAILROADS—VOTE PREVIOUSLY GIVEN—ACT REPEALED.

1. That under the evidence the town authorities had the right to issue the bonds.

2. That when there had been a vote given under the constitution of 1848, by any town which was then authorized to issue bonds, the fact that the bonds were issued after the adoption of the constitution of 1870, cannot change it; that the constitution did not take effect on such a case at all.

3. That the legal effect of the language when it declared that no subscription should be made by any county court, or by the legal authorities of any incorporated city or town,—is when they were authorized to subscribe by the provisions of the act of 1869, and that it did not intend to repeal any specific authority given by a previous act of the legislature to a town named therein to make subscriptions of stock, or to issue bonds for the same purpose; that the act of 1869, did not repeal the act of 1867.

[At law. Action by William H. Balcheller against the town of Mascoutah on railroad aid bonds. Plaintiff demurs to rejoinders. Demurrer sustained.]

DRUMMOND, Circuit Judge. The decision in this case depends upon the construction to be given to the act of March 5th, 1867, authorizing the town of Mascoutah to issue bonds to such amount as the authorities by ordinance might determine, payable in not less than ten nor more than twenty years, and bearing 10 per cent. interest per annum, provided that no such bonds should be issued unless a majority of the taxpayers, to whom

the question was to be submitted, decided in favor thereof. The replication to which rejoinders have been put in, which have been demurred to, avers that there was a decision made by the taxpayers of the town of Mascoutah; that there was a regular vote upon the question on two different occasions, and that by a majority of the taxpayers the town authorities were authorized to issue bonds.

Now there are two points made. One is that the town authorities had no right to issue the bonds, and that they were issued since the adoption of the constitution. It is, after all, at most pleading in a circle and could not be considered as anything more than an irregular traverse of the replication. As to the question under the constitution we have already substantially decided that point, and it is very clear that where there had been a vote previously given by any town which was then authorized to issue bonds, the fact that the bonds were issued after adoption of the constitution can not change it. In truth the constitution expressly excepted the issue of all bonds where it has been authorized by an existing law by a vote of the people prior to its adoption. In other words, the constitution did not take effect upon such a case at all.

Then the other point is, that by the act of the 10th of March, 1869, the act of 1867 was repealed. This act was an act incorporating the St. Louis & Great Eastern Railway Company. We have not seen the act, but we suppose it is correctly cited in the brief of the counsel for the defense. That act declared —the 15th section—that no subscription should be made by any county, or by the legal authorities of any incorporated city or town, until after the question of such subscription was submitted "by order of the legal authorities to the legal voters thereof." Now there is some conflict between this act of 1869 and the act of 1867, but it is more apparent than real; for instance, the manner in which a subscription should be made, and the persons who were to authorize the subscription are different; in the act of 1867 the city authorities were to issue the bonds in such amounts as they might determine, payable in not less than ten or more than twenty years bearing 10 per cent. interest per annum. There was to be a subscription by the act of 1869. The legal voters were to authorize it; in the act of 1867, the taxpayers were to authorize it. Voters and taxpayers are not identical under our law. Ten per cent. was authorized by the act of 1867, 8 per cent. only was authorized by the act of 1869. Now the question is whether this act intended to repeal the act of 1867. Was it in the mind of the legislature to repeal the former act by the latter? We think that the weight of the argument is that it did not intend to repeal it; that the legal effect of this language, when it declared that no subscription should be made by any county court, or

by the legal authority of any incorporated city or town, is when they were authorized to subscribe by the provisions of the act of 1869, and that it did not intend to repeal any specific authority given by a previous act of the legislature to a town named therein to make subscriptions of stock, or to issue bonds for the same purpose. But if this were doubtful, we think the doubt must be solved in favor of the position, that the act of 1869 did not repeal the act of 1867, because the supreme court of this state must have passed upon that question.

It is strenuously contended on the part of the defense that it did not. But what are the facts? The bonds were issued under the act of 1867, by the town of Mascoutah, on the hypothesis that an authority existed for that purpose, and a tax was sought to be imposed to pay the interest upon these bonds and a bill was filed to restrain the town authorities from levying the tax. It is said and we do not doubt truly, that no question was made in the circuit court as to the effect of the act of 1869 upon the act of 1867, but in the argument before the supreme court when it finally came before the court on a writ of error, that point was made by counsel; in other words the attention of the court was distinctly called to the position taken by counsel, that the act of 1869 did repeal the act of 1867. The attention of the court was again called to it in the application for a rehearing; the court had decided in effect that there was nothing in point of law to prevent the town authority from levying a tax, thereby holding that it was a legal tax authorized by law. Now to say that under such circumstances, the court could disregard the act of 1869, if it did in its opinion repeal the act of 1867, is really asking more than we can believe, unless the court was entirely derelict in its duty. Because it was not material whether the act of 1869 was named in the pleadings or not, nor whether it might be a law having more or less of a public character or not. If it operated in point of law as a repeal, it was the duty of the court so to declare and hold that there was no authority to issue the bonds, and therefore no authority to impose the taxes. And although they say nothing upon this point in their opinion, it must have been because they considered it was unnecessary and not because they thought they were not bound to take notice of the law. If they thought that the one law repealed the other, they certainly should so have said. Again, this act of 1869, is a law for the construction of the St. Louis & Southeastern Railway Company, a railroad that goes through some counties of the state; it authorizes the taking of private property for the road on the ground that it is for the public use; and it was the duty of the court to take notice of this law when its attention was called to it. And it was named as a law which by possibility might repeal the law of 1867.

So on both grounds we hold that these rejoinders are not good, and that the demurrer must be sustained.